**FILED**

**JAN 2 1 2003**

███████████████ INGTON, CLERK
████████ COURT

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br>United States Attorney's Office<br>555 4th St., NW<br>Room 101-110<br>Washington, DC 20035<br><br>Department of Justice<br>Commercial Litigation Branch<br>Post Office Box 261<br>Ben Franklin Station<br>Washington, D.C. 20044,<br><br>          Plaintiff,<br><br>     v.<br><br>THE PROJECT ON GOVERNMENT<br>OVERSIGHT,<br>Brand & Frulla, P.D.<br>923 Fifteenth Street, N.W.<br>Washington, D.C. 20005,<br><br> and<br><br>ROBERT A. BERMAN,<br>Tighe Patton Armstrong & Teasdale, P.L.L.C.<br>1747 Pennsylvania Avenue, N.W., Suite 300<br>Washington, D.C. 20006-4604,<br><br>         Defendants. | CASE NUMBER  1:03CV00096<br><br>JUDGE: Thomas Penfield Jackson<br><br>DECK TYPE: General Civil<br><br>DATE STAMP: 01/21/2003<br><br><br>Civil No. 03- |

## COMPLAINT

Plaintiff, the United States of America, brings this action against the defendants for civil

penalties and injunctive relief pursuant to 18 U.S.C. § 216(b) and (c) for violations of 18 U.S.C.

§ 205 (receiving a share in a claim against the United States) and 18 U.S.C. § 209 (supplementa-

tion of Government salary); for damages for breach of fiduciary duty; for unjust enrichment; and for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202. The United States alleges as follows.

## Jurisdiction and Venue

1.      This Court has jurisdiction over this matter pursuant to 18 U.S.C. § 216(b) and (c) (actions for civil penalties and injunctions, respectively, under 18 U.S.C. §§ 205 and 209), 28 U.S.C. §§ 2201 and 2202 (actions for declaratory relief), and 28 U.S.C. §§ 1331 and 1345.

2.      Venue in the District of Columbia is proper under 28 U.S.C. §§ 1391 and 1395(a).

## Parties

3.      Plaintiff is the United States of America.

4.      Defendant, The Project on Government Oversight (POGO), is a non-profit organization that identifies itself as a Government watchdog whose mission it is to investigate, expose, and remedy Government waste, fraud, and abuse. On November 2, 1998, POGO paid defendant Robert A. Berman $383,600 for work performed as a federal employee. POGO is located at 1900 L Street, N.W., Washington, D.C.

5.      Defendant Robert A. Berman is an employee of the United States Department of the Interior. Mr. Berman received and deposited the $383,600 payment from POGO for work performed while he was employed by the Department of the Interior.

## Background

### *Oil Valuation, Royalties, and the Defendants' Participation*

6.      Oil and gas production on federal and Indian lands is governed by the federal Oil and Gas Royalty Management Act of 1982, 30 U.S.C. § 1701 *et seq.* Pursuant to that act, the United States enters into mineral leases with oil producing companies. The leases grant these

- 2 -

private companies the right to extract oil from federal and Indian lands in exchange for royalties paid to the United States.

7.     The Department of the Interior Minerals Management Service is the United States agency responsible for managing the production of oil from federal and Indian lands and from offshore fields. The Minerals Management Service is also responsible for managing the collection of royalties for oil removed from federal and Indian lands pursuant to the leases.

8.     The royalties paid by the oil companies to the United States are based on the valuation of the oil removed from federal and Indian lands. The valuation standards are set forth at 30 C.F.R. § 206.102. The regulation pertinent to this action was promulgated by the Department of Interior in 1989, and amended in 2000. Pursuant to that regulation, oil producers calculate and pay royalties to the United States subject to later audit by the Minerals Management Service. The companies report their valuation of oil to the Government on forms submitted to the Minerals Management Service.

9.     Robert A. Berman is a senior economist for the Department of the Interior. From at least 1987 and throughout the period pertinent to this complaint, Mr. Berman was a senior economist in the Office of the Secretary, Office of Policy Analysis. In that capacity, Mr. Berman was involved in issues concerning the interpretation, application, and amendment of the valuation regulation.

### *The Qui Tam Litigation*

10.     In the early '90s, The Project on Government Oversight (POGO) began to question whether oil companies were defrauding the United States by undervaluing the oil extracted from federal and Indian lands, resulting in the underpayment of royalties to the Government. POGO investigated by obtaining documents and information from the

- 3 -

Government, both through the Freedom of Information Act and by other means, and from outside sources. Two of POGO's sources in the Government were Mr. Berman, the defendant, and Robert A. Speir, who was then an employee for the Department of Energy serving at various times in the Office of the Secretary, the Office of Oil and Natural Gas Policy, and the Energy Information Administration. POGO had numerous communications with Messrs. Berman and Speir before, during, and after its determination that the oil companies, in fact, had defrauded the United States.

11.    Under the *qui tam* provision of the False Claims Act, 31 U.S.C. § 3730, private persons known as "relators" may file an action on behalf of themselves and the United States alleging a violation of the act's substantive provision, 31 U.S.C. § 3729. Such actions are filed under seal for a period of at least 60 days, during which the United States has the opportunity to investigate the allegations and determine whether it will intervene in the action and go forward with the litigation, or decline to intervene in which case the relator may go forward. If the United States intervenes, the relator is entitled to a 15-25% share of the proceeds of any settlement or judgment. If the Government declines to intervene, the relator's share increases to 25–30% of the proceeds.

12.    On June 9, 1997, POGO filed two *qui tam* actions in the United States District Court for the Eastern District of Texas, against numerous oil companies alleging that the companies had undervalued the oil extracted from federal and Indian lands pursuant to their leases with the Department of the Interior, had underreported the royalties to the Government, and therefore had underpaid the royalties owed to the Government, in violation of the False Claims Act. In addition to POGO, the complaint identified POGO Executive Director Danielle Brian and Director Leonard Brock as relators.

- 4 -

13.     Before POGO filed its *qui tam* actions, other relators had filed two other *qui tam* actions in the same court on February 16 and August 2, 1996.

14.     The False Claims Act bars *qui tam* actions that are based on allegations or transactions which are already the subject of a civil suit. 31 U.S.C. § 3730(e)(3). Consequently, the multiple actions, with overlapping claims and defendants, raised issues of which relators had the right to proceed on which claims. In order to sort this out, the United States sought court orders to lift the seals in the four *qui tam* cases to allow it to notify each of the relators of the related actions.

15.     Following notification, the relators met and discussed the jurisdictional issues raised by the multiple *qui tam* actions. Rather than litigate, the relators reached an agreement in September, 1997, to work together and mutually share in the proceeds of any ultimate recovery.

16.     On February 18, 1998, the United States notified the court of its decision to intervene as to certain defendants and of its lack of decision as to other defendants. Also on February 18, 1998, the relators jointly moved to consolidate the four actions. The court granted the consolidation and ordered the complaint unsealed and served on the defendants. (The complaint remained under seal for a short while longer as to two defendants.)

17.     On August 28, 1998, the United States entered into a settlement agreement with Mobil Oil Company for $45 million. The relators' share of this settlement was 18% of the proceeds, or $8.1 million.

18.     Despite the relators' agreement and consolidation of the cases, the defendants moved to dismiss some of the relators on the ground that the jurisdictional defects in the original suits could not be cured. On December 8, 1998, the court granted the defendants' motion and dismissed POGO and its initial co-relators, Ms. Brian and Mr. Brock, for lack of subject matter

jurisdiction. The court held in a later ruling that, despite their dismissal from the suit, POGO and its co-relators were entitled to share in the proceeds of any settlement or judgment based on the relators' September 1997 contractual agreement.

19.     Subsequent to the Mobil settlement, the United States entered into settlements with the remaining 15 defendants for a total recovery of $440 million and a relators' share of more than $67 million.

***POGO's Payments to Messrs. Berman and Speir***

20.     Sometime before filing its *qui tam* actions on June 9, 1997, POGO asked Messrs. Berman and Speir if they wanted to join POGO as co-relators in the actions. Both declined, but entered into an agreement with POGO to share in POGO's portion of the proceeds of any settlement or judgment POGO might eventually recover as a result of the actions. This agreement was entered into on an unknown date sometime before December 9, 1996.

21.     On December 9, 1996, the POGO board of directors met and discussed the agreement between POGO and Messrs. Berman and Speir. The minutes of that meeting recite that "Ms. Brian mentioned that an agreement has been worked out that if there is some reward [as a result of the *qui tam* actions], whatever and whenever an amount would be won, that the individuals that have been doing this work for years would be compensated." The individuals referred to in these minutes are Messrs. Berman and Speir.

22.     On January 5, 1998, POGO, Mr. Berman, and Mr. Speir (who had retired from Government service in October, 1997) entered into a written agreement "to put in writing the standing oral agreement" to share the proceeds of the *qui tam* litigation. The agreement states that "[a]ny and all proceeds to come to the Project On Government Oversight or Danielle Brian through this law suit will be shared equally (33 1/3%) between POGO, Mr. Speir and Mr.

- 6 -

Berman." The agreement is signed by Ms. Brian for POGO and by Messrs. Berman and Speir.

23.     On October 8, 1998, approximately six weeks after the Mobil settlement, POGO

confirmed in a memorandum to Mr. Berman POGO's "commitment to live up to our existing

understanding that POGO will share in equal thirds with you and Bob Speir all past and future

settlement amounts we receive through our filing of the False Claims Act case regarding the

underpayment of oil royalties." The memorandum goes on to state that POGO "will distribute

the shares already received, as well as the accrued interest, on or before November 2, 1998 and

will distribute shares from any other settlements promptly upon receipt."

24.     On October 27, 1998, Ms. Brian briefed the POGO Board of Directors on the

Mobil settlement. According to the minutes of the meeting, Ms. Brian stated that POGO had

received "just under $1.2 million." She also noted that the staff consulted with a "Constitutional

attorney" and that the lawyers and POGO's accountant had said that the cover letter transmitting

the payments to Messrs. Berman and Speir should be identified as an "award for public service."

25.     POGO's commitment to pay Messrs. Berman and Speir, made at least as early as

December 9, 1996, pre-dated any consultations POGO may have had with its lawyers and

accountant. By identifying the payments as an "award" on last minute advice of counsel, POGO

hoped to mask the improper payments to Messrs. Berman and Speir for their work as federal

employees.

26.     On November 2, 1998, POGO issued two checks to Messrs. Berman and Speir in

the amount of $383,600 each, as their shares in the Mobil settlement. Both Mr. Berman and Mr.

Speir deposited their checks soon after receiving them.

27.     On information and belief, POGO continued to retain the right to receive a portion

of the $67 million paid to the relators as their share in the settlements subsequent to Mobil, and

Messrs. Berman and Speir continued to retain their rights to share that amount with POGO.

***Defendant Berman's Role in the Qui Tam Litigation Leading Up to the Payments***

28.    From April, 1996, to June 2, 1997, Mr. Berman initiated several telephone conversations with Benjamin Johnson, an expert in the field of oil marketing and valuation and a relator in one of the two *qui tam* actions filed before POGO's. Mr. Berman questioned Mr. Johnson extensively about oil marketing, valuation, and underpayment of royalties. At the time, Mr. Johnson's *qui tam* action was under seal and POGO's were yet to be filed. (POGO would file on June 9, 1997). From at least January 1997, Mr. Berman had no job related assignments that would have prompted the conversations.

29.    On August 16, 1996, POGO called a Department of Justice attorney believed to be working on oil valuation issues and asked for an address to send information. Following the telephone call, POGO sent the Department of Justice a package with a cover letter dated August 19, 1996. On information and belief, some of the documents contained in this package were non-public documents.

30.    In early September, 1996, POGO called the Justice attorney again to request a meeting to provide further information. Following this telephone call, two Justice attorneys met with POGO on September 12, 1996. At this meeting (which took place when the first two *qui tam* actions were still under seal and before POGO filed its two *qui tam* actions), POGO attempted to find out whether any *qui tam* actions had been filed against oil companies alleging underpayment of royalties. POGO also provided the Justice attorneys with a list of knowledgeable persons, including Mr. Berman.

31.    Soon after receiving Mr. Berman's name from POGO, a Justice attorney contacted Mr. Berman and conducted a telephone interview. Mr. Berman and the attorney talked for about

an hour. After being advised that the Department of Justice was investigating possible under

payments of royalties in the oil industry, Mr. Berman proceeded to answer the attorney's

questions about oil valuation and how the system worked. When asked whether he thought

certain practices were fraudulent, Mr. Berman responded "yes."

32.     The attorney also asked Mr. Berman what he knew about POGO. Mr. Berman

indicated only that he was aware of POGO.

33.     In September, 1996, the Department of Justice began to draft a civil investigative

demand (CID) to be served on the defendant oil companies. (A CID is an investigative tool

pursuant to the False Claims Act, similar to a subpoena.) In so doing, the Justice attorney

consulted with Mr. Berman. He provided Mr. Berman with draft document requests and asked

for his comments.

34.     On September 25, 1996, Mr. Berman sent a memorandum to the Justice attorney

with comments and suggestions on how to improve the CID.

35.     On September 30, 1996, Mr. Berman's second level supervisor sent a

memorandum to the Justice attorney officially enclosing Mr. Berman's memorandum and making

additional suggestions. Copies of this memorandum were sent to Mr. Berman and his

immediate supervisor. Neither of Mr. Berman's supervisors was aware of his relationship to

POGO, of POGO's intention to file a *qui tam* action, or of Mr. Berman's possible interest in that

action.

**Count I**
**Supplementing the Salary of a Government Official**
**18 U.S.C. §§ 209 and 216(b) and (c)**
**(Defendants Berman and POGO)**

36.     This is a civil action pursuant to 18 U.S.C. § 216(b) and (c) for supplementing or

contributing to the salary of a Government official, in violation of 18 U.S.C. § 209.

37.    Paragraphs 1 through 35 are realleged and incorporated as though fully set forth.

38.    Mr. Berman knowingly received $383,600 from POGO in compensation for his

services as an officer or employee of the executive branch, which compensation supplemented or

contributed to his Government salary.

39.    POGO knowingly paid Mr. Berman $383,600 in compensation for his service as

an officer or employee of the executive branch, which compensation supplemented or

contributed to his Government salary.

40.    On information and belief, POGO knowingly paid Mr. Berman, or intends to pay

Mr. Berman, additional compensation as his share of the $67 million paid to the relators out of

the proceeds of the settlements in the *qui tam* litigation following the Mobil settlement.

41.    As a result of the foregoing, Mr. Berman and POGO violated 18 U.S.C. § 209 and

are liable to the United States under 18 U.S.C. § 216(b) and (c).

## Count II
### Receiving a Share in a Claim Against the United States
### 18 U.S.C. §§ 205 and 216(b) and (c)
### (Defendant Berman)

42.    This is a civil action pursuant to 18 U.S.C. § 216(b) and (c) for receiving a share

of or interest in a claim against the United States, in consideration of assistance in the

prosecution of such claim while being an officer or employee of the executive branch, in

violation of 18 U.S.C. § 205.

43.    Paragraphs 1 through 35 are realleged and incorporated as though fully set forth.

44.    While being an officer or employee of the executive branch, Mr. Berman

knowingly received an interest in POGO's claim against the United States for a share of the

- 10 -

proceeds of any settlement or judgment in the *qui tam* litigation, in consideration of his assistance in the prosecution of such claim.

45.    While being an officer or employee of the executive branch, Mr. Berman knowingly received $383,600 as his share in POGO's claim against the United States for a share in the proceeds of the Mobil settlement, in consideration of his assistance in the prosecution of such claim.

46.    On information and belief, Mr. Berman knowingly received or will receive in the future additional sums as his share in POGO's claim for a portion of the $67 million paid to the relators out of the proceeds of the settlements in the *qui tam* litigation following the Mobil settlement, in consideration of Mr. Berman's assistance in the prosecution of that claim.

47.    As a result of the foregoing, Mr. Berman and POGO violated 18 U.S.C. § 205 and are liable to the United States under 18 U.S.C. § 216(b) and (c).

## Count III
## Breach of Fiduciary Duty
## (Defendant Berman)

48.    This is a civil action for breach of fiduciary duty.

49.    Paragraphs 1 through 35 are realleged and incorporated as though fully set forth.

50.    As an employee of the federal Government, Mr. Berman has a fiduciary duty to be loyal to the United States and to be bound by the ethical rules and regulations applicable to such employees. These duties include, but are not limited to,

(a)    refraining from holding financial interests that conflict with the conscientious performance of duty;

(b)    refraining from engaging in financial transactions using nonpublic Government information or allowing the improper use of such information to further any private

- 11 -

interest;

(c)     refraining from accepting any payments from any person or entity whose interests may be substantially affected by the performance or nonperformance of the employee's duties;

(d)     refraining from using public office for private gain;

(e)     acting impartially and not giving preferential treatment to any private organization or individual;

(f)     refraining from outside activities that conflict with official Government duties and responsibilities;

(g)     endeavoring to avoid any actions which create the appearance that the employee is violating the law or ethical standards;

(h)     refraining from accepting gifts from prohibited sources, including entities that have interests which may be substantially affected by performance or nonperformance of the employee's official duties; and

(i)     refraining from soliciting or accepting gifts because of the employee's official position if the gift would not have been solicited, offered, or given had the employee not held his position as a federal employee.

51.     By agreeing to accept secret payments from POGO for a share of the proceeds in the *qui tam* litigation while working for the federal Government, by accepting payment of $383,600 as his share of the Mobil settlement, and by accepting any subsequent payments, Mr. Berman violated one or more of these duties and breached his fiduciary duty to the United States, and is therefore liable.

## Count IV
## Unjust Enrichment
## (Defendant Berman)

52.     This is a civil action for unjust enrichment.

53.     Paragraphs 1 through 35 are realleged and incorporated as though fully set forth.

54.     By accepting payment from POGO of $383,600 as his share of the Mobil

settlement for work performed while he was a federal employee and by accepting any subsequent

payments, Mr. Berman was unjustly enriched in the amount of the payments and any accrual of

interest or profits he may have gained since receiving such payments.

## Count V
## Declaratory and Injunctive Relief
## 28 U.S.C. §§ 2201 and 2202
## (Defendants POGO and Berman)

55.     This is a civil action for a declaratory judgment and ancillary injunctive relief.

56.     Paragraphs 1 through 35 are realleged and incorporated as though fully set forth.

57.     The payments made by POGO to Mr. Berman for a share of the Mobil settlement,

as well as any payments to be made in the future as a result of the *qui tam* litigation, are unethical

and illegal. Therefore, the defendants' agreement to share in the proceeds of the *qui tam*

litigation is void and unenforceable, and no further payments should be made.

### Prayer for Relief

WHEREFORE, the United States of America prays that judgment be entered in its favor

against the defendants as follows:

Under Count I, against defendants Berman and POGO for civil penalties up to $50,000

per violation or the amount of compensation received or offered, whichever is greater, pursuant

to 18 U.S.C. § 216(b), and for an injunction against receiving or offering compensation in the

- 13 -

future, pursuant to 18 U.S.C. § 216(c);

Under Count II, against defendant Berman for civil penalties up to $50,000 per violation or the amount of compensation received, whichever is greater, pursuant to 18 U.S.C. § 216(b), and for an injunction against receiving compensation in the future, pursuant to 18 U.S.C. § 216(c);

Under Count III, against defendant Berman, for damages for breach of fiduciary duty;

Under Count IV, against defendant Berman in the amount he was unjustly enriched, including interest and profits;

Under Count V, for a declaratory judgment and ancillary injunctive relief, pursuant to 28 U.S.C. §§ 2201 and 2202, that the payments made by POGO to Mr. Berman for a share of the Mobil settlement, as well as any additional payments made or to be made as a result of the *qui tam* litigation, are unethical and illegal; therefore, the defendants' agreement to share in the proceeds of the *qui tam* litigation is void and unenforceable, and no further payments should be made.

The United States also requests that it be awarded costs and such other relief as the Court deems just and proper.

- 14 -

Respectfully submitted,

ROBERT D. McCALLUM, JR.
Assistant Attorney General

ROSCOE C. HOWARD, JR., DC BAR # 246470
United States Attorney

MARK E. NAGLE, DC Bar #416365
Assistant United States Attorney

EDWARD D. ALKALAY
Assistant United States Attorney
555 4th Street, NW
Room 10-110
Washington, DC 20035
(202)514-7131

MICHAEL F. HERTZ
JUDITH RABINOWITZ
D.C. Bar # 940320
Attorneys, Civil Division
Commercial Litigation Branch
Post Office Box 261
Ben Franklin Station
Washington, D.C.  20044
(202) 307-0386

Dated: January 21, 2003

- 15 -