**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**UNITED STATES OF AMERICA,**

     **Plaintiff,**

       **v.**                                 Civil Action No.  03-0096 (JDB)

**PROJECT ON GOV'T OVERSIGHT,**
**et al.,**

     **Defendants.**

---

<u>**MEMORANDUM OPINION**</u>

     A federal statute prohibits private parties from making, and certain government employees from receiving, payments that compensate those employees for their government service.  <u>See</u> 18 U.S.C. § 209(a); <u>United States v. Project on Gov't Oversight</u>, 454 F.3d 306, 309 (D.C. Cir. 2006) ("<u>POGO I</u>").  A companion provision prescribes criminal and civil penalties for violations of § 209(a).  <u>See</u> 18 U.S.C. § 216.  The question presented by the motion to dismiss now before the Court is which of two possible statutes of limitations applies to a suit in which the United States seeks to impose a civil penalty pursuant to 18 U.S.C. § 216(b).  Is it, as the United States argues and the plain language suggests, the five-year limitations period that applies to suits in which the United States government seeks "enforcement of any civil fine, penalty, or forfeiture"?  <u>See</u> 28 U.S.C. § 2462.  Or is it, as defendant Project on Government Oversight ("POGO") contends, the three-year statute of limitations that governs "every action for money damages brought by the United States . . . which is founded upon a tort"?  <u>See</u> 28 U.S.C.

1

§ 2415(b).  For the reasons explained below, the Court concludes that the applicable statute of limitations is the five-year period set forth in 28 U.S.C. § 2462.  This suit was therefore timely filed, and POGO's motion to dismiss will be denied.

## BACKGROUND

This recitation of the relevant facts is drawn largely from the Complaint filed on January 21, 2003 and the D.C. Circuit's opinion in POGO I, 454 F.3d at 306.  In the early 1990s, defendant POGO began investigating whether oil companies were fraudulently undervaluing the amount of oil that they extracted from federal and American Indian lands and, as a consequence, underpaying the royalties owed to the United States government.  Id. at 306-07.  The federal agency charged with managing the collection of oil royalties was and is the Department of the Interior.  Compl. ¶ 7.  Defendant Robert A. Berman started working as an economist in the Department's Office of Policy Analysis in 1987 and held that post throughout POGO's investigation.  Id. ¶ 9.  Berman had repeated contacts with POGO starting in 1994, and along with Department of Energy employee Robert A. Speir, became one of POGO's principal sources for royalty-related information.  Id. ¶ 10; POGO I, 454 F.3d at 307.

The investigation culminated in POGO's filing two qui tam actions in the U.S. District Court for the Eastern District of Texas in 1997.  Id.  In its suits, which were two of four filed in that district, see Compl. ¶¶ 12-14, POGO alleged that the oil companies had violated the False Claims Act, 31 U.S.C. § 3729, by undervaluing the oil they extracted and by underpaying the royalties that they owed the United States.  POGO I, 454 F.3d at 307.  Although POGO had offered him the opportunity to join as a qui tam relator, Berman instead entered into an oral

agreement, later memorialized in writing, under which he would receive one-third of the money

that POGO recovered in the Texas litigation.  Id.; Compl. ¶ 22.  That litigation resulted in

settlement agreements first with Mobil Oil Company and then with fifteen other oil companies.

Id. ¶¶ 17, 19.  Those companies agreed to pay the United States a total of $440 million, of which

the qui tam relators' share was $67 million.  Id. ¶ 19; POGO I, 454 F.3d at 307.

POGO collected its first settlement payment of $1.2 million in 1998.  Compl. ¶ 23.  Soon

after receiving the money, POGO undertook efforts to distribute to Berman and to Speir their

respective one-third shares.  POGO informed an Assistant United States Attorney who had

worked on the qui tam litigation of its intention to share the proceeds with Berman, who claims

to have discussed the matter with, and received approval from, his government ethics officer.

POGO I, 454 F.3d at 307.  On November 2, 1998, POGO issued checks in the amount of

$383,600 to Berman and to Speir.  Id.; Comp. ¶ 26.  Apparently acting on the advice of counsel,

id. ¶¶ 24-25, POGO labeled the payment a "Public Service Award," and explained in an

accompanying letter that it had awarded Berman the funds "for his 'decade-long public-spirited

work to expose and stop the oil companies' underpayment of royalties for the production of crude

oil on federal and Indian lands.'"  POGO I, 454 F.3d at 307.

More than four years later, in January of 2003, the United States filed a five-count civil

complaint against POGO and Berman.  Count I of the Complaint alleged that POGO and Berman

had violated one of the federal conflict-of-interest statutes, 18 U.S.C. § 209(a).  POGO had done

so, the Complaint asserted, by supplementing the salary of a government official, and Berman

had committed a violation by accepting the supplemental payment.  Compl. ¶¶ 36-41.  Seeking

relief for the statutory violation pursuant to 18 U.S.C. § 216(b), id. ¶ 41, the United States

requested civil penalties of the greater of $50,000 per violation or "the amount of compensation received" by Berman.  Id., Prayer for Relief.  The United States also sought injunctive relief declaring "void and unenforceable" the agreement in which POGO promised to distribute a share of its qui tam recovery to Berman.  Id. ¶¶ 41, 57.

POGO promptly filed a motion to dismiss, arguing, as it does in the present motion, that the suit was time barred because it had been filed outside of the three-year statute of limitations that POGO believes applicable.  Dkt. #2.  The district judge to whom the case was assigned denied the motion without prejudice in a brief order entered on April 16, 2003, and set a schedule for the filing of dispositive motions.  Dkt. #6.  Once those motions were filed, the judge indicated a reluctance to resolve the case at the summary judgment stage.  See POGO I, 454 F.3d at 308.  Just two weeks later, however, he shifted course, eventually granting the United States' motion for summary judgment in a brief order entered on August 31, 2004.  Id.; Dkt. #31.  The order also certified the case for an interlocutory appeal, which POGO, but not Berman, chose to pursue.

In an opinion filed on July 14, 2006, the D.C. Circuit reversed the grant of summary judgment against POGO.  POGO I, 454 F.3d at 306.  The court of appeals explained that summary judgment would have been proper only "if there is no genuine dispute that POGO paid Berman as compensation for his services as an Interior Department economist."  Id. at 310.  But because there was such a dispute regarding whether POGO issued the check as compensation for Berman's government service, rather than as recognition for whistleblowing activity outside the scope of his work, the court of appeals concluded that the grant of summary of judgment had been erroneous and remanded the case for further proceedings.  Id. at 306, 313.

By the time of the D.C. Circuit's decision, the district judge had retired, and the case was

reassigned to this Court.  A status conference was held on October 11, 2006, at which time the

Court set a deadline for both POGO and Berman to file any motion to dismiss.  Dkt. #35.  POGO

promptly filed a motion renewing its argument that the portion of the government's action that

seeks a "civil penalty" is untimely and must be dismissed for failure to state a claim upon which

relief can be granted.[1]  The government having filed its opposition and POGO a reply, the motion

is now ripe for resolution.

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure

will not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in

support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46

(1957); see also Haynesworth v. Miller, 820 F.2d 1245, 1254 (D.C. Cir. 1987).  All that the

Federal Rules of Civil Procedure require of a complaint is that it contain "'a short and plain

statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and

the grounds upon which it rests."  Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 346

(2005) (quoting Conley, 355 U.S. at 47).  "Given the Federal Rules' simplified standard for

pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted

under any set of facts that could be proved consistent with the allegations.'"  Swierkiewicz v.

Sorema N.A., 534 U.S. 506, 514 (2002) (citation omitted).

---

[1] Of the five counts in the United States's Complaint, only two - - Counts I and V - - name POGO as a defendant.  POGO does not dispute that Count V, which requests injunctive relief, was timely filed, and thus contests the timeliness of only the cause of action alleged in Count I. See Mem. in Supp. of Mot. to Dismiss ("POGO's Mem.") at 6 n.4.

5

Under Rule 12(b)(6), the plaintiff's factual allegations must be presumed true and should be liberally construed in his or her favor.  Leatherman v. Tarrant County Narcotics & Coordination Unit, 507 U.S. 163, 164 (1993); Phillips v. Bureau of Prisons, 591 F.2d 966, 968 (D.C. Cir. 1979).  The plaintiff must be given every favorable inference that may be drawn from the allegations of fact.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000).  But "the court need not accept inferences drawn by plaintiff if such inferences are unsupported by the facts set out in the complaint.  Nor must the court accept legal conclusions cast in the form of factual allegations."  Kowal v. MCI Commc'n Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994); see also Domen v. Nat'l Rehab. Hosp., 925 F. Supp. 830, 837 (D.D.C. 1996) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

## DISCUSSION

The sole question before the Court is whether this action seeking a civil penalty pursuant to 18 U.S.C. § 216(b) constitutes a "suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise."  28 U.S.C. § 2462.  In answering this question, the parties take starkly contrasting approaches and, not surprisingly, arrive at different conclusions. POGO advocates an historical angle, maintaining that 18 U.S.C. § 216(b) must be construed against the backdrop of a Fourth Circuit decision issued the year before the statute's passage, a decision holding that the statute of limitations for a suit analogous to this one was three years. See United States v. Boeing Co., 845 F.2d 476, 481-82 (4th Cir. 1988), rev'd on other grounds sub nom. Crandon v. United States, 494 U.S. 152 (1990).  In so doing, POGO gives little weight to Congress's use of the term "civil penalty" in § 216(b), insisting instead that whether the statute

is in fact "penal" in nature is a question of statutory construction that must be answered objectively.  See POGO's Mem. at 9.  The statute, POGO argues, should be viewed as essentially "remedial" in nature so as to avoid what it believes would be double jeopardy concerns in other cases.  Id. at 10.

For its part, the United States places heavy emphasis on Congress's use of the phrase "civil penalty" in § 216(b).  "It is telling," the government argues, "that POGO doesn't cite a single case in which a court holds that a statute denoting a 'civil fine, penalty or forfeiture' remedy is subject to 28 U.S.C. § 2415 or any other general limitations statute."  United States's Mem. in Opp'n to Mot. to Dismiss ("Gov't Opp'n") at 3.  When combined with the principle that statutes of limitations ought to be strictly construed in favor of the government, see Badaracco v. Comm'r of Internal Revenue, 464 U.S. 386, 391 (1984), the United States submits that Congress's choice of language controls.  But even if that language is not conclusive, the United States contends, the sanction imposed in § 216(b) qualifies as a "penalty" under binding D.C. Circuit precedents interpreting 18 U.S.C. § 2462.  After careful consideration of the parties' submissions and the relevant authorities, the Court concludes that a civil suit pursuant to § 216(b) constitutes an action to enforce a "penalty," and hence the government's suit against POGO is timely under § 2462's five-year statute of limitations.  Because this conclusion hinges largely on statutory construction, the Court will begin its analysis with an introduction to the relevant statutes.

**A.  Statutory Framework**

There are four statutes central to this case.  The first is 18 U.S.C. § 209(a), one of "almost two dozen statutory provisions addressing bribery, graft, and conflicts of interest that were

revised and compiled at Chapter 11 of the Criminal Code in 1962." Crandon v. United States, 494 U.S. 152, 158-59 (1990); see also Van Ee v. Envtl. Protection Agency, 202 F.3d 296, 305 (D.C. Cir. 2000) (describing these statutes "as a third major effort by Congress to define conflict-of-interest restrictions for federal employees"). Section 209(a) "prohibits private parties from paying, and Government employees from receiving, supplemental compensation for the employee's Government service." Crandon, 494 U.S. at 154. This criminal statute, which has remained substantively identical since its enactment, bars employees from accepting payments "as compensation for [the] services" they rendered as government workers. See POGO I, 454 F.3d at 309 (citing United States v. Muntain, 610 F.2d 964, 969 (D.C. Cir. 1979)). "Services that a government employee provides other than as part of his official responsibilities," the D.C. Circuit has clarified, "do not satisfy this requirement." Id.

Until 1989, § 209(a) also established the penalties to which those who violated it would be subject. It provided that both government employees who accepted salary supplements and private parties who made the prohibited payments could be imprisoned for up to a year, fined $5,000, or both. See Crandon, 494 U.S. at 154 n.1 (citation omitted). In the Ethics Reform Act of 1989, however, Congress altered the mechanism for enforcing § 209(a) and some of the other conflict-of-interest statutes. See Pub. L. No. 101-194, 103 Stat. 1716 (Nov. 30, 1989). First, Congress struck from § 209(a) the language "Shall be fined not more than $5,000 or imprisoned not more than one year, or both," and inserted in its place the sentence "Shall be subject to the penalties set forth in section 216 of this title." Pub. L. No. 101-194, § 406, 103 Stat. 1753. Congress then added a "new section," 18 U.S.C. § 216, in which it set forth the criminal and civil penalties for violations of six of the conflict-of-interest statutes, including § 209(a). See id.

8

§ 407, 103 Stat. 1753.

Section 216 contains three parts.  Its first subsection establishes criminal penalties, subjecting any person who violates the substantive statutes to up to one year in prison, a fine, or both.  18 U.S.C. § 216(a)(1).  For willful violations of the covered statutes, the maximum term of imprisonment is increased to five years.  Id. § 216(a)(2).  The next subsection, § 216(b), lies at the heart of this case.  That subsection authorizes the Attorney General to "bring a civil action in the appropriate United States district court against any person" who violates one of the six enumerated statutes.  If the government proves "by a preponderance of the evidence" that the party has violated one of those statutes, then that party is "subject to a civil penalty of not more than $50,000 for each violation or the amount of compensation which the person received or offered for the prohibited conduct, whichever amount is greater."  Id. § 216(b).  But "[t]he imposition of a civil penalty under this subsection," the statute makes clear, "does not preclude any other criminal or civil statutory, common law, or administrative remedy" that either the United States or another party may pursue.  Id.  Finally, subsection (c) allows the government, when it believes an employee is currently engaging in conduct prohibited by one of the six statutes, to seek from the district court an injunction "prohibiting that person from engaging in such conduct if the court finds that the conduct constitutes" one of the listed offenses. Id. § 216(c).

Although § 216 contains a detailed set of provisions, one thing is conspicuously absent: a statute of limitations for either criminal or civil actions.  There is little mystery as to the limitations period governing criminal prosecutions subject to § 216(a), since Congress has enacted a "catchall" statute of limitations of five years for those federal offenses that are not

governed by a more specific period.  See 18 U.S.C. § 3282.  No such catchall or default statute of

limitations exists, however, for civil suits brought pursuant to § 216(b).  See Agency Holding

Corp. v. Malley-Duff & Assocs., Inc., 483 U.S. 143, 157 (1987) (Scalia, J., concurring in the

judgment).  Hence, the Court must look to "some other source" to locate the most relevant

limitations period.  See DelCostello v. Int'l Broth. of Teamsters, 462 U.S. 151, 158 (1983).

While courts typically borrow the limitations period from state law, see Graham County Soil &

Water Conservation Dist. v. United States ex rel. Wilson, 545 U.S. 409, 414 (2005), they need

not do so "where there is a relevant federal statute of limitations."  Public Interest Research

Group v. Powell Duffryn Terminals, 913 F.2d 64, 74 (3d Cir. 1990); see also Agency Holding

Corp., 483 U.S. at 156; DelCostello, 462 U.S. at 162.

   The parties here each point to a different federal statute as the "relevant" one that supplies

the limitations period: 28 U.S.C. § 2462 or 28 U.S.C. § 2415(b).  Section 2462 states that,

"[e]xcept as otherwise provided by Act of Congress, an action, suit or proceeding for the

enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be

entertained unless commenced within five years from the date when the claim first accrued . . . ."

According to the United States, the portion of its lawsuit seeking a civil penalty against POGO is,

by definition, a "suit . . . for the enforcement of . . . [a] penalty," bringing this case squarely

within the plain language of § 2462.  But POGO sees things differently.  The government, in

POGO's view, is seeking a civil remedy for POGO's allegedly tortious conduct in inducing a

federal employee to breach the fiduciary duty that he owed the United States.  And because the

underlying violation sounds in tort, the statute of limitations must be the three-year period that

applies to tort suits brought by the United States seeking to recover money damages.  See 28

U.S.C. § 2415(b).  As the following discussion demonstrates, however, POGO's approach gives

short shrift to the plain language of the relevant statutes, attributes to Congress the intention of

creating three separate limitations periods for a single enforcement provision, and seeks to apply

an outdated test formerly used in the double-jeopardy context instead of the inquiry that the D.C.

Circuit has utilized for determining whether a sanction constitutes a penalty under § 2462.

**B.  Applicable Statute of Limitations**

The primary argument advanced by the United States is that the "civil penalty" available

in a suit under § 216(b) is by definition one of the "penalt[ies]" for which 28 U.S.C. § 2462

supplies a five-year limitations period.[2]  Congress, the government points out, used expansive

language in § 2462, prescribing a statute of limitations for "an action, suit or proceeding" in

which the United States seeks to enforce "any civil fine, penalty, or forfeiture, pecuniary or

otherwise."  (Emphasis added.)  A limitations period that applies to suits seeking enforcement of

"any . . . penalty," the argument goes, is surely broad enough to encompass those suits enforcing

a specific and statutorily created "civil penalty."  This is particularly so in light of the Supreme

Court's instruction that courts should "assume, absent sufficient indication to the contrary, that

Congress intends the words in its enactments to carry 'their ordinary, contemporary, common

---

[2] In its brief, the United States twice elides the word "fine" in § 2462 so as to make the
statute read "any civil . . . penalty."  See Gov't Opp'n at 3.  But as the statutory history traced by
the D.C. Circuit reveals, the word "civil" was added to the statute in 1948 only as part of the term
"civil fine."  See 3M Co. v. Browner, 17 F.3d 1453, 1458 n.7 (D.C. Cir. 1994)  The Reviser's
Notes further demonstrate that Congress intended only changes "in phraseology" when it
modified § 2462's predecessor.  Id. at 1458.  Applying the "well-established canon of
construction" that changes only in phraseology do not alter a statute's substance, the D.C. Circuit
concluded "that the revised statute means only what it meant before 1948."  Id. (citing Keene
Corp. v. United States, 508 U.S. 200, 209 (1993)).  Hence, there is no indication that Congress
intended the modifier "civil" not only to apply to "fine," but also to be distributed across the
terms "penalty" and "forfeiture."

meaning.'" <u>Pioneer Investment Servs. Co. v. Brunswick Assocs. Ltd. P'ship</u>, 507 U.S. 380, 388

(1993) (citation omitted).  Understood in its "ordinary, contemporary, common" sense, the phrase

"civil penalty" unequivocally means a type of penalty.  <u>See</u> Black's Law Dictionary 1153-54 (7th

ed. 1999) (defining a penalty as "[p]unishment imposed on a wrongdoer, esp[ecially] in the form

of imprisonment or fine," and a "civil penalty" as "[a] fine assessed for violation of a statute or

regulation").

    The history of § 2462, which the D.C. Circuit has painstakingly traced back to the

eighteenth and nineteenth centuries, reveals that the statute has long featured the word "penalty"

and has always been inclusive in its breadth.  <u>See</u> <u>3M Co. v. Browner</u>, 17 F.3d 1453, 1458 & n.7

(D.C. Cir. 1994) (reproducing versions of the statute as far back as 1839 that include the "any

penalty" language).  <u>3M Co.</u> is instructive in other respects as well.  The primary issue there was

whether § 2462 applied to an administrative proceeding in which the Environmental Protection

Agency ("EPA") sought to assess a "civil penalty" for violations of the Toxic Substances Control

Act ("TSCA").  <u>Id.</u> at 1455.  That statute provides that all violators "shall be liable to the United

States for a civil penalty in an amount not to exceed $25,000 for each such violation."  <u>Id.</u>

(quoting 15 U.S.C. § 2615(a)(1)).  The D.C. Circuit held that the administrative process through

which the EPA decides whether and the extent to which it should assess a monetary sanction

qualified as a "proceeding for the enforcement of [a] . . . penalty" for purposes of § 2462.  <u>Id.</u> at

1457-59.  In reaching that conclusion, the court of appeals did not even pause to question

whether Congress's choice of the term "civil penalty" in the TSCA sufficed to demonstrate that

the EPA's action was one to enforce a "penalty."  To the contrary, the court focused on two other

segments of § 2462's text - - the phrases "for the enforcement of" and "unless commenced within

12

five years from the date when the claim first accrued" - - without so much as suggesting that a sanction labeled a "civil penalty" by Congress could be anything other than a "penalty" within § 2462.  3M Co. thus establishes not only that § 2462 can apply to administrative proceedings, but also that Congress's choice of a particular label for a particular sanction is entitled to substantial, if not controlling, weight.  See also Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there.") (citations omitted); United States v. Ward, 448 U.S. 242, 248 (1980) (explaining that the Supreme Court, in determining "whether a particular statutorily defined penalty is civil or criminal," first looks to whether Congress "indicated either expressly or impliedly a preference for one label or the other").

As mentioned above, the United States makes much out of POGO's inability to marshal any cases in which a court has declined to apply § 2462 to a statute that expressly uses the term "civil penalty."  See Gov't Opp'n at 3.  The absence of such authority is certainly significant.  But just as significant is the consistent line of cases in which courts, like the D.C. Circuit in 3M Co., have applied § 2462's five-year limitations period to statutes that prescribe a "civil penalty" and that do not have a more specific statute of limitations.  The Clean Air Act, Clean Water Act, Federal Election Campaigns Act, Federal Trade Commission Act, Fair Housing Act, and federal securities laws, among other federal statutes, all include civil-penalty provisions analogous to the one found in 18 U.S.C. § 216(b).  They also lack, as does § 216(b), a specific statute of limitations.  In construing these statutory provisions, courts have uniformly concluded that § 2462 supplies the governing limitations period, relying in large part on Congress's use of the terms "civil penalty" or "civil penalties."  See, e.g., National Parks Conservation Ass'n., Inc. v.

13

Tennessee Valley Authority, - - F.3d - -, 2007 WL 623474, at *5 (6th Cir. March 2, 2007) (Clean Air Act); United States v. Walsh, 8 F.3d 659, 662 (9th Cir. 1993) (same); United States Pub. Interest Research Group v. Atl. Salmon of Maine, LLC, 257 F. Supp. 2d 407, 426 (D. Me. 2003) (Clean Water Act); Fed. Election Comm'n v. Williams, 104 F.3d 237, 240 (9th Cir. 1996) (Federal Election Campaigns Act) (citing Fed. Election Comm'n v. Nat'l Right to Work Comm., Inc., 916 F. Supp. 10, 13 (D.D.C. 1996), and Fed. Election Comm'n v. Nat'l Republican Senatorial Comm., 877 F. Supp. 15, 18-19 (D.D.C. 1995)); United States v. Bldg. Inspector of Am., 894 F. Supp. 507, 513-14 (D. Mass. 1995) (Federal Trade Commission Act); United States v. Inc. Vill. of Island Park, 791 F. Supp. 354, 367-68 (E.D.N.Y. 1992) (Fair Housing Act); Securities and Exch. Comm'n v. Caserta, 75 F. Supp. 2d 79, 89 (E.D.N.Y. 1999) (securities laws).  Hence, the case law confirms that a suit by the United States seeking what Congress has denominated a "civil penalty" qualifies as an action for enforcement of a "penalty" under § 2462.

POGO's push for the opposite conclusion rests largely on the Fourth Circuit's decision in United States v. Boeing Co., 845 F.2d 476, 481-82 (4th Cir. 1988), rev'd on other grounds sub nom. Crandon v. United States, 494 U.S. 152 (1990).  When that case reached the Fourth Circuit, there was no statutory basis for enforcing 18 U.S.C. § 209(a)'s prohibition on salary supplementation through a civil action.  See Crandon, 494 U.S. at 157.  Courts had thus inferred a cause of action under federal common law, determining that "civil remedies" for violations of § 209(a) must "exist based on the fiduciary duty owed by federal employees," a duty that was "defined by the statutory standard of conduct." Boeing Co., 845 F.2d at 479.  According to the Fourth Circuit, the civil claim against the private party making the prohibited payment was "based in tort for the inducement of a breach of [the] duty" owed by the government employees.

14

Id. at 481.  Such claims, the court held, must be brought within three years of the alleged

misconduct because tort claims in which the United States seeks money damages are subject to

the three-year limitations period set forth in 28 U.S.C. § 2415(b).  Id.  In contrast, the court held

that a civil action against the employees themselves could be brought up to six years after the

statutory violation.  This was because the employee's violation "constitutes a breach of the duty

of loyalty, and is contractual in nature," such that the applicable statute of limitations was the six-

year one governing actions in which the United States seeks money damages "founded upon any

contract."  Id. at 482 (citing 28 U.S.C. § 2415(a)).  As of the Boeing Co. decision, then, the

Fourth Circuit had constructed a three-tiered regime under which a criminal prosecution to

enforce § 209(a) was subject to a five-year statute of limitations, a civil suit against the

government-employee recipient of a supplemental payment was subject to a six-year limitations

period, and a civil action against the private party making the payment was subject to a three-year

limitations period.

POGO's reliance on Boeing Co. is misplaced for several reasons.  The first and most

obvious of these is that the Fourth Circuit did not rest its decision on an interpretation of the

language of § 216 (which had not yet been enacted), or strive to discern the limitations period

that Congress would have intended.  The court instead searched for civil analogues to what

Congress had enacted as criminal prohibitions, locating those analogues in the familiar common

law of tort, contract, and agency principles.  As POGO sees things, Congress must have been

legislating with those same concepts in mind when it passed § 216 in 1989.  POGO is certainly

correct about the premise: Congress is presumed to be familiar with existing law as construed by

the Supreme Court and the lower federal courts.  See Public Citizen v. Fed. Aviation Admin.,

988 F.2d 186, 195 (D.C. Cir. 1993) (citing <u>Cannon v. Univ. of Chicago</u>, 441 U.S. 677, 696-97

(1979)).  But POGO's desired conclusion - - that Congress intended to codify the <u>Boeing Co.</u>

decision  - - does not follow from that premise.

The principal weakness in POGO's argument is its failure to explain why Congress

should be presumed to have ratified, rather than rejected, the Fourth Circuit's anomalous three-

tiered structure, especially given how symmetrical § 216 would otherwise be.  If § 2462's statute

of limitations applies, then any case brought to enforce § 209(a), with the exception of a request

for injunctive relief under § 216(c), would be subject to the same five-year limitations period.

The same limitations period, in other words, would apply whether the suit was a criminal

prosecution under § 216(a) or a civil action under § 216(b), and whether the suit was brought

against the party paying the money or the employee who received the money.  This construction

of the statute is an eminently sensible one, and is therefore preferable under prevailing canons of

construction.  <u>See, e.g.</u>, <u>McPhee & McGinnity Co. v. Union Pac. R. Co.</u>, 158 F. 5, 17 (8th Cir.

1907) ("[A] rational, sensible, and practical interpretation of a Constitution, statute, or contract

should be preferred to one which is unreasonable, absurd, or impracticable."); 2A Norman J.

Singer, Sutherland Statutory Construction § 45:12 (6th ed. 2002) ("It is a well established

principle of statutory interpretation that the law favors rational and sensible construction.")

(citation and quotation marks omitted).  Again, POGO provides no explanation, outside of the

general proposition that Congress legislates against the backdrop of prior court decisions, for

why, under its view, civil and criminal penalties would be carefully codified and calibrated in a

single statutory section, but enforcement would hinge on three different limitations periods found

in three separate provisions: 18 U.S.C. § 3282's five-year period for criminal prosecutions, 28

16

U.S.C. § 2415(a)'s six-year period for civil suits against government employees, and 28 U.S.C.

§ 2415(b)'s three-year period for civil actions against private parties.  The absence of any

persuasive justification for Congress to have acted in this manner, together with the legislature's

significant and careful choice of the term "civil penalty," convinces the Court that § 2462

provides the applicable statute of limitations here.

But even if the Court were to conclude that neither Congress's choice of the phrase "civil

penalty" nor the structure of § 216 is determinative, controlling D.C. Circuit precedent still

dictates that § 2462's five-year statute of limitations applies.  The key case, as both parties

acknowledge, is Johnson v. Securities and Exch. Comm'n, 87 F.3d 484 (D.C. Cir. 1996).  There,

the question was whether the censure and six-month disciplinary suspension ordered by the SEC

constituted a "penalty" for purposes of § 2462.  Because censure and suspension were not

statutorily defined as "penalties," the D.C. Circuit focused on the plain meaning of that term and

the distinction drawn by the Supreme Court between sanctions that are remedial in nature and

those that are penal.  Id. at 487-88 (analyzing Huntington v. Attrill, 146 U.S. 657 (1892), and

Meeker v. Lehigh Valley Rd. Co., 236 U.S. 412 (1915)).  The court of appeals then defined "a

'penalty,' as the term is used in § 2462, [as] a form of punishment imposed by the government for

unlawful or proscribed conduct, which goes beyond remedying the damage caused to the harmed

parties by the defendant's action."  Id. at 488; see also Proffitt v. Fed. Deposit Ins. Corp., 200

F.3d 855, 860-61 & n.5 (D.C. Cir. 2000) (reaffirming this definition).  In holding that the

administrative action leading to the censure and six-month suspension constituted a proceeding

to enforce a "penalty," the court emphasized that the sanctions were backward-looking ones

imposed "as punishment for past dereliction."  Johnson, 87 F.3d at 490.  Those two sanctions,

unlike "restitution or disgorgement of ill-gotten profits," did not have the effect of "restor[ing] the <u>status quo ante</u>," since they were "not directed toward correcting or undoing the effects of Johnson's allegedly" improper conduct.  <u>Id.</u> at 491.  "[T]he sanctions in this case," the court concluded, "impose a punishment for Johnson's violation of a standard laid down in the [Securities and] Exchange Act, and qualify therefore as a 'penalty' within the meaning of § 2462." <u>Id.</u> at 492.

Under the definition articulated in <u>Johnson</u> and reaffirmed in <u>Proffitt</u>, the monetary sanction available under 18 U.S.C. § 216(b) likewise qualifies as a penalty.  The sanction is backward-looking, examining the offending party's conduct at the time of the alleged statutory violation, not at the time the suit was filed.  (A request for injunctive relief under § 216(c), in contrast, looks to whether "a person is engaging" in conduct that violates one of the enumerated statutes at the time that the proceeding is initiated.)  Nor is the sanction designed to make the United States whole.  Rather, § 216(b) specifically allows the government, as it has done here, to seek monetary penalties from both the employee who received the payment <u>and</u> the private party who made it.  This means that the statute goes "beyond" forfeiture, disgorgement, or restitution, <u>see</u> <u>Johnson</u>, 87 F.3d at 490-92, by permitting the government to sanction a second party even when it has received the full "amount of compensation" from the first.  18 U.S.C. § 216(b). Indeed, if POGO had paid Berman only $1,000 on two separate occasions, the United States could still seek pursuant to § 216(b) the statutorily prescribed civil penalty of $100,000 - - $50,000 "for each violation" - - from both POGO <u>and</u> Berman, resulting in a total recovery of $200,000, or 100 times the total amount of the payments.  The amount of the monetary sanction imposed, in short, is not limited to the "harm" or "damages" that the United States actually

18

suffered as a result of the statutory violations.  See 3M Co., 17 F.3d at 1460 ("In an action for a civil penalty, the government's burden is to prove the violation; injuries or damages resulting from the violation are not part of the cause of action; the suit may be maintained regardless of damage."); see also Johnson, 87 F.3d at 487 (explaining that a legal action is not one "for a penalty" where it "seek[s] only compensation for the damages suffered").  For all of these reasons, the sanction available under § 216(b) constitutes "a form of punishment of the individual for unlawful or proscribed conduct, going beyond compensation of the wronged party."  Johnson, 87 F.3d at 491.

     The United States makes an additional point worthy of mention.  As explained above, the Johnson court concluded its analysis by distinguishing the censure and suspension imposed in that case from restitution and disgorgement, two sanctions that "attempt to restore the stolen funds to their rightful owner."  Id. at 491-92.  Conversely, the court continued, censure and suspension "impose a punishment for Johnson's violation of a standard laid down in the Exchange Act, and qualify therefore as a 'penalty' within the meaning of § 2462."  Id. at 492.  The United States persuasively argues here that the federal conflict-of-interest statutes establish a similar "standard" - - namely, that "federal employees shall be free of conflicts, including the conflict inherent in receiving compensation from two masters."  Gov't Opp'n at 13.  Just as the sanctions imposed for violations of the Exchange Act qualified as a penalty in Johnson, so too, the United States submits, should the monetary fine available under § 216(b) for violating another important federal statute, 18 U.S.C. § 209(a).  The Court agrees that this analogy is a fundamentally sound one.  Hence, under the Johnson analysis, a suit seeking the monetary sanctions provided in § 216(b) qualifies as an action for the enforcement of a penalty for

purposes of § 2462.

Finally, the Court must address POGO's reliance on a line of cases, including one from this district, decided in the double-jeopardy context. See POGO's Mem. at 6-7 (citing, among other cases, United States v. Bouchey, 949 F. Supp. 9, 11-12 (D.D.C. 1996), and United States v. Moore, 765 F. Supp. 1251, 1256-57 (E.D. Va. 1991)). These authorities are inapposite for two reasons. First, the D.C. Circuit emphatically stated in Johnson, and explicitly reaffirmed in Proffitt, that the inquiry for determining whether a sanction constitutes "punishment" under the Fifth Amendment's Double Jeopardy Clause is not the same test used to decide whether a sanction "is a penalty for purposes of § 2462." Johnson, 87 F.3d at 491; Proffitt, 200 F.3d at 860-61 n.5. The Bouchey court's conclusion that § 216(b) was not "punitive" for double-jeopardy purposes therefore has no bearing on whether a suit pursuant to that provision is subject to § 2462's five-year statute of limitations. Second, even if the cases decided in the double-jeopardy context constituted relevant authority, Bouchey and Moore engaged in a type of analysis that the Supreme Court has since expressly "disavow[ed]." See Hudson v. United States, 522 U.S. 93, 96, 102 (1997) (rejecting as "unworkable" the "test for determining whether a particular sanction is 'punitive'" established in United States v. Halper, 490 U.S. 435, 448 (1989)). Accordingly, the focus of those district courts on whether a civil action to enforce 18 U.S.C. § 209(a) was penal or remedial in nature is no longer proper even in a double-jeopardy challenge to successive sanctions. See Hudson, 522 U.S. at 101 (reinstating the pre-Halper framework under which the Double Jeopardy Clause bars only multiple criminal punishments and the Court examines whether the punishment is criminal or civil by studying the statute on its face).

One last word with respect to Bouchey is warranted. For the first time on appeal, the

defendant in that case invoked § 2462's five-year statute of limitations, arguing that it served as a jurisdictional bar to the government's suit under § 216(b).  In a brief unpublished order summarily affirming the district court, the D.C. Circuit rejected that argument because "§ 2462 does not apply to this proceeding."  United States v. Bouchey, No. 97-5023, 1997 WL 404714, at *1 (D.C. Cir. June 5, 1997) (per curiam) (citing Johnson, 87 F.3d at 488).  POGO contends for the first time in its reply brief that this unpublished summary order - - which was decided in the double-jeopardy context prior to the Supreme Court's Hudson decision - - nonetheless constitutes a "binding precedent" that forecloses the government's position.  See POGO's Reply at 4.  That contention is erroneous.  Under the rules of the D.C. Circuit, an unpublished order serves only to dispose of the case under review and has no precedential value.  See D.C. Cir. Rule 36(c)(2) ("While unpublished dispositions may be cited to the court in accordance with [Fed. R. App. P.] 32.1 and Circuit Rule 32.1(b)(1), a panel's decision to issue an unpublished disposition means that the panel sees no precedential value in that disposition."); see also Embrey v. Bush, Civ. A. No. 05-2022, 2006 WL 2466809, at *3 (D.D.C. Aug. 24, 2006) (noting that the court of appeals' "unpublished dispositions . . . lack precedential value and are not binding on this Court").  The unpublished order in Bouchey, in sum, does not establish binding circuit precedent and does not alter this Court's conclusion that the statute of limitations applicable to a suit under § 216(b) is the five-year period provided by § 2462.

## C.  Timeliness of the Suit Against POGO

The Court's conclusion that the five-year limitations period of § 2462 applies to a civil action under § 216(b) means that the United States's suit seeking a civil penalty against POGO is timely.  In this circuit, as both parties appear to acknowledge, "an action, suit or proceeding to

assess or impose a civil penalty must be commenced within five years of the date of the violation giving rise to the penalty."  3M Co., 17 F.3d at 1462.  Here, assuming that there was a statutory "violation giving rise to [a civil] penalty," that violation occurred on November 2, 1998, when POGO issued a check to Berman for $383,600.  The United States filed its civil complaint against POGO and Berman on January 21, 2003.  That is, the suit was filed more than four years, but less than five years, after the issuance of the check.  The suit was accordingly commenced within the governing limitations period, and the United States may proceed with the claim against POGO and Berman alleged in Count I of the Complaint.

## CONCLUSION

For the foregoing reasons, the Court concludes that the United States's civil action pursuant to 18 U.S.C. § 216(b) was timely filed.  POGO's motion to dismiss is therefore denied. A separate order has been posted on this date.

_____/s/  John D. Bates_____
JOHN D. BATES
United States District Judge

Dated:   April 6, 2007