UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>    **Plaintiff,**<br><br>    v.<br><br>**PROJECT ON GOV'T OVERSIGHT, et al.,**<br><br>    **Defendants.** | Civil Action No.  03-0096 (JDB) |

## MEMORANDUM OPINION

Following a discussion of the issue at the initial pretrial conference held on January 3, 2008, the government filed a motion *in limine* to preclude POGO and Berman from introducing any evidence of their "subjective intent" at trial.  Familiarity with the facts set out in United States v. Project on Gov't Oversight, -- F. Supp. 2d --, 2007 WL 4226961 (D.D.C. Dec. 3, 2007) ("POGO III"), is now assumed.  On January 22, 2008, the Court issued an Order granting the government's motion in order to allow the parties sufficient time to incorporate the decision on the motion into their pre-trial statements due on January 23, 2008.  This Memorandum Opinion explains the reasons for that ruling.

## DISCUSSION

The crux of the government's position is that the Supreme Court's decision in United States v. Crandon, 494 U.S. 152 (1990), precludes defendants from relying upon any evidence that they lacked the "subjective intent" to compensate Berman for his government services. Specifically, the Supreme Court stated in Crandon that "[n]either good faith, nor full disclosure, nor exemplary performance of public office will excuse the making or receipt of a prohibited

-1-

payment" under 18 U.S.C. § 209(a). Id. at 165. That passage, the government argues, establishes that "subjective intent" is not a necessary element of § 209(a) liability. Defendants respond that the government is misreading Crandon. Moreover, POGO and Berman point out that the Department of Justice itself regards "intent" as a relevant criterion for § 209(a) liability as evidenced by several Office of Legal Counsel ("OLC") opinions addressing that topic. Upon careful consideration, and for the reasons set forth below, the Court concludes that the government is correct.

The starting point is the statutory language, which is unfortunately not a model of precision. In relevant part, § 209(a) provides:

> Whoever receives any salary, or any contribution to or supplementation of salary, as compensation for his services as an officer or employee of the executive branch of the United States Government, . . . from any source other than the Government of the United States . . .; or
> Whoever . . . pays, makes any contribution to, or in any way supplements, the salary of any such officer or employee under circumstances which would make its receipt a violation of this subsection --
> Shall be subject to penalties set forth in section 216 of this title.

18 U.S.C. § 209(a). On its face, the statute contains no intent or mens rea terms, such as "intentionally" or "knowingly." Broken down, the elements of a § 209(a) offense are: (1) a non-government party (2) makes a contribution or supplementation to (3) the salary of an executive branch official (4) "as compensation for his services as an officer or employee of the executive branch." Upon reflection, only a portion of the final element is seriously in dispute in this case.[1]

POGO is undeniably a private entity that made a payment to Berman, an employee in the executive branch of the government. Whether that payment is characterized as compensation for internal government memoranda (as the government would have it) or generalized

---

[1] It is important to note that the government is still required to prove all of the elements at trial. In that regard, the Court is not entering any finding regarding the first three requirements here. For purposes of resolving the "subjective intent" issue, however, the Court believes only the fourth element is at issue.

whistleblowing activities (as POGO would have it), the common thread is that the body of work at issue relates to Berman's efforts concerning oil royalty issues. Indeed, POGO has consistently admitted that it "compensated" Berman; it only disputes that such compensation was in payment for his official governmental services. United States v. Project on Gov't Oversight, 454 F.2d 306, 312 (D.C. Cir. 2006) ("POGO I") ("Rather, POGO asserts that the 'work' for which it compensated Berman . . . was work as an internal whistleblower who went well beyond his official duties to defend the taxpayers interests.") (internal citation omitted). Thus, in essence, the parties largely agree on the particular "services" that the payment was "for"; the dispute centers around whether those services were governmental.

By framing the issue in that manner, it becomes evident that "subjective intent" is not a relevant issue in this case. That is not to say, however, that "intent" may never be a factor in the § 209(a) analysis. A hypothetical exercise is helpful to flesh this out. Suppose, for instance, that in addition to all of the facts of this case, Berman had also written a book on oil royalty issues completely on his own time (and, theoretically, without any specific aid from his government employment). In that case, POGO could have chosen to issue a public service award to Berman for either of two distinct reasons: (1) because of the contributions made by his book, which would apparently be a permissible payment for purposes of § 209(a) because the book-writing fell outside the scope of his official duties; or (2) because of the same internal whistleblowing involved in this litigation, which is at least arguably impermissible under § 209(a). There might still need to be an inquiry as to whether the services leading to the payment of the award were governmental under § 209(a). But the first inquiry would be as to what the award was for. In that inquiry, POGO's "intent" would seem to be relevant to determining which body of work -- one likely non-governmental or one likely governmental -- motivated POGO's payment to Berman.[2] Put another way, POGO's intent in making the payment, and Berman's intent in

---

[2] It could, of course, be the case that both factors played a role in POGO's theoretical payment, but that determination would still rest in part on the intent of POGO and Berman.

accepting it, would be helpful to establish what "services" the award was "as compensation for" under § 209(a).[3]

But this Court need not decide that issue, for that is not the case here. POGO has effectively admitted what the payment was "for": Berman's so-called whistleblowing. Analyzed in terms of § 209(a), the "as compensation for his services" requirement is satisfied, and only the remaining portion of that clause -- "as an officer or employee of the executive branch" -- is the core of this controversy. This Court has already decided that POGO and Berman's subjective belief is not relevant to the actual scope of his official government responsibilities. United States v. Project on Gov't Oversight, -- F. Supp. 2d --, 2007 WL 4545853 at *2 (D.D.C. Dec. 21, 2007) ("POGO's belief that it was not paying Berman for his *government* work, even if true, is not relevant to the issue of whether the reports in fact amount to Berman's official government services."). Defendants offer no persuasive reason to disturb that conclusion.

That conclusion, moreover, is consistent with the Supreme Court's holding in Crandon. As noted above, the Court explained that "[n]either good faith nor full disclosure, nor exemplary performance of public office will excuse the making or receipt of a prohibited payment" under § 209(a). Crandon, 494 U.S. at 165. Although it is true (as POGO points out) that the Supreme Court did not expressly state that intent is not a required element of § 209(a) liability, it is difficult to give the quoted passage meaning through any other interpretation. After all, both good faith and full disclosure are evidence of "intent," at least in some sense. See, e.g., Black's Law Dictionary 713 (8th ed. 2004) (defining "good faith" as "[a] state of mind consisting in . . . honesty in belief or purpose . . . [or] faithfulness to one's duty or obligation"). In effect, Crandon renders irrelevant for purposes of § 209(a) liability a party's mistaken belief, held in good faith, that it has not compensated an executive employee for his government services. But that is precisely the use that POGO and Berman seek to make of their "subjective intent" evidence here.

---

[3] Even then, objective indicia of POGO's intent would control over POGO's subjective statements of its intent.

See POGO's Opp'n at 4 ("POGO requests this Court to allow evidence proving that POGO did not intend the payments to Mr. Berman to be compensation for his government services.").

Despite the plain import of Crandon, POGO maintains that "the Court's holding with respect to good faith and full disclosure did not equate to a finding that intent is unnecessary to a § 209(a) violation." POGO's Opp'n at 2. In support of that proposition, POGO cites to the lower court opinions in Crandon itself. In fact, POGO contends that the Supreme Court "by maintaining its silence on the intent issue . . . actually condoned the lower courts' rulings that intent was an essential element of a purported § 209 violation." Id. That is incorrect. In Crandon, the Supreme Court held that § 209(a) does not apply to payments made to individuals before they enter into government service. 494 U.S. at 168. Because that threshold decision disposed of the case and dictated reversal, the Court had no reason to reach the other issues discussed by the lower courts, including the intent rulings. Thus, POGO's argument that the Supreme Court "condoned" the lower courts' rulings on intent is untenable in light of the fact that the Supreme Court's holding effectively vacated those portions of the lower court opinions.[4]

The Supreme Court's firm statement that § 209(a) is a "prophylactic rule" reinforces the outcome here. See Crandon, 494 U.S. at 164. As the government correctly points out, the statute's "prophylactic effect would be severely weakened," see Pl.'s Mot. at 3, if defendants' asserted subjective intent factors into the analysis. In essence, defendants' proposed reading would permit private parties to define the scope of § 209(a) liability through their potentially

---

[4] Similarly, POGO's suggestion that the Crandon passage "simply reaffirmed the appellate court's ruling rejecting the defendants' argument that full disclosure negated any § 209(a) violation," see POGO's Opp'n at 2, is not persuasive. As explained above, the Supreme Court did not "affirm" any portion of the appellate court's opinion. Instead, the good faith language in Crandon is found in a discussion of the policies underlying § 209(a). 494 U.S. at 165. It is not possible to interpret the Supreme Court's admonishment as anything other than an independent and clear determination that "[n]either good faith, nor full disclosure, nor exemplary performance of public office will excuse the making or receipt of a prohibited payment." Id.

erroneous (and self-serving) understanding of an executive employee's official duties.[5] Moreover, in Crandon the Supreme Court held that only a "literal reading of the statute . . . is consistent with . . . the policies that motivated the enactment of the statute." 494 U.S. at 168. So, too, here. It bears repeating that § 209(a) does not contain any language regarding "intent" or "knowledge," which stands in contrast to other federal conflict of interest statutes that expressly incorporate such elements. See, e.g., 18 U.S.C. § 207(c) ("Whoever, . . . within one year [of departing employment as an applicable agency official], knowingly acts as agent or attorney for . . . or, with intent to influence . . . .") (emphasis added); see also United States v. Nofziger, 878 F.2d 442, 443-44 (D.C. Cir. 1989). Indeed, when Congress sought to add such "intent" elements, it did so clearly and unequivocally. The choice to omit those terms from § 209(a), then, appears deliberate.

In effect, defendants invite the Court to re-write § 209(a) to read: "Whoever receives any salary, or any contribution to or supplementation of salary, *knowingly* as compensation for his services as an officer or employee of the executive branch" and "[w]hoever . . . *intentionally* pays, makes any contribution to, or in any way supplements, the salary of any such officer or employee . . . ." The Court declines that invitation. Simply put, it was within the discretion of Congress to draft the statute without such terms and it would be inappropriate to disregard that here. See United States v. Sun-Diamond Growers of California, 526 U.S. 398, 408-09 (1999) ("[W]hen Congress has wanted to adopt such a broadly prophylactic criminal prohibition upon gift giving, it has done so in a more precise and more administrable fashion. For example, [§ 209(a)] criminalizes the giving or receiving of any 'supplementation' of an Executive official's

---

[5] Indeed, as the government aptly noted: "POGO suggests that the government can't prove that a payment is *for government service* without showing that the defendant *intended* it to be for government service. That is simply not correct." Pl.'s Reply at 8 (emphasis in original). The Court agrees. Whether particular services are governmental must turn on factors such as an employee's designated duties or even statutory or regulatory requirements. The government is also correct to note that because "good faith is not a defense, the test of whether payment is for government service . . . must be purely objective." Id.

salary, <u>without regard to the purpose of the payment</u>.") (emphasis added).

Two additional objections to this interpretation are raised.  First, POGO asserts that "while the government in this case is arguing intent is irrelevant, the same government, through OLC, is proclaiming that the intent of the payor is essential to a § 209(a) violation."  POGO's Opp'n at 5.  Second, both POGO and Berman argue that the government's position improperly converts § 209(a) into a "strict liability" statute.  <u>Id.</u> at 6; Berman's Opp'n at 2.  Neither argument is persuasive.

The OLC issue can be disposed of quickly.  Defendants cite two OLC opinions as evidence that § 209(a) involves the sort of subjective intent at issue here.  It is not necessary to engage in a lengthy discussion of the facts and bases of those opinions because they ultimately have little, if any, bearing on this proceeding.  To begin with, as the government correctly points out, OLC issues its opinions following a nonadversarial process designed to provide a "counseling" service for prospective activity.  Pl.'s Mot. at 4.  That the DOJ may view "intent" as relevant for that purpose does not mean that "intent" is a necessary element of § 209(a) liability.  Defendants do not suggest (nor could they) that the OLC opinions have any estoppel effect on the government here.  Moreover, to the extent that the OLC opinions conclude or imply that subjective intent is a relevant inquiry for determining whether services were "as an officer or employee of the executive branch" under § 209(a), the Court disavows that conclusion for the reasons stated above.

Turning to the "strict liability" issue, the Court notes that defendants' arguments on this point in fact amount to the simple contention that § 209(a) cannot be a strict liability statute.  This is a somewhat peculiar objection.  To be sure, strict liability statutes are not the norm, but as the government points out, "there is nothing forbidden or unseemly about strict liability statutes."  Pl.'s Mot. at 7.  For its part, the government contends that "[l]abeling § 209(a) a strict liability statute is a misnomer and a red herring."  <u>Id.</u> at 5.  The upcoming trial should be proof enough of that.

But even assuming that § 209(a) is in fact a strict liability offense, that would not make it unique among the federal conflict of interest statutes. In relevant part, 18 U.S.C. § 208(a) provides: "Whoever, [being covered by this section] participates personally and substantially . . . in [a] particular matter in which, to his knowledge . . . any organization with whom he is negotiating or has any arrangement concerning prospective employment, has a financial interest . . . [shall be guilty of a felony]." United States v. Hedges, 912 F.2d 1397, 1400 (11th Cir. 1990) (quoting § 208(a)). In Hedges, the Eleventh Circuit held that § 208(a) lacks a *scienter* requirement and "is a strict liability offense statute." Id. Similarly, the D.C. Circuit has held that 18 U.S.C. § 203, another federal conflict of interest statute that is similar in nature to § 209, also lacks a *scienter* requirement. United States v. Baird, 29 F.3d 647, 652 (D.C. Cir. 1994); see also United States v. Sun-Diamond Growers of California, 138 F.3d 961, 968 (D.C. Cir. 1998) (confirming that Baird held that § 203(a) does "not embody . . . a *scienter* requirement"), aff'd United States v. Sun-Diamond Growers, 526 U.S. 398 (1999). Thus, the mere fact that § 209(a) may, in some instances, impose strict civil liability where subjective intent is not a relevant consideration does not render that statutory interpretation erroneous.

In short, while subjective intent may sometimes be a part of the § 209(a) inquiry in determining what the payment was "for" -- an issue this Court does not reach -- it is not a relevant inquiry in determining whether what the payment was for constitutes government services. Because only the latter issue is seriously contested here, the subjective intent of POGO and Berman has no relevance in this case. For that reason, the Court has granted the government's motion *in limine*.

## CONCLUSION

For the foregoing reasons, the government's motion *in limine* is granted as reflected in the Order dated January 22, 2008.

                                                              /s/      John D. Bates

                                                                       John D. Bates  
                                               United States District Judge

Dated:   January 23, 2008