**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

          **v.**                                    **Civil Action No.  03-0096 (JDB)**

**PROJECT ON GOV'T OVERSIGHT, et**
**al.,**

      **Defendants.**

---

**MEMORANDUM OPINION**

      This case comes before the Court on the government's post-trial motion for judgment on

Counts III, IV, and V of its complaint.  As this is the latest (and last) in a series of opinions

issued by this Court in this matter, familiarity with this proceeding is assumed.  In Count III, the

government seeks judgment in the amount of $383,600 plus interest against defendant Robert

Berman for allegedly breaching his fiduciary duty to the United States.  In Count IV, the

government requests similar relief because Berman was allegedly unjustly enriched when he

received the payment from defendant the Project on Government Oversight ("POGO").  Berman

opposes both grounds for judgment.  Finally, in Count V, the government seeks declaratory and

injunctive relief against Berman and POGO, both of whom oppose the relief sought.  The

government's motion is now fully briefed and ripe for resolution.  After careful consideration,

and for the reasons set forth below, the Court will deny the motion.

## DISCUSSION

### I.        Breach of Fiduciary Duty & Unjust Enrichment

By accepting the public service award in the amount of $383,600 from POGO, the

government argues, Berman breached the fiduciary duty that he owed to the United States, his

employer.  That obligation arises from the common law duty of loyalty that an agent owes to his

principal.  See United States v. Carter, 217 U.S. 286, 306 (1910) ("The larger interests of public

justice will not tolerate, under any circumstances, that a public official shall retain any profit or

advantage which he may realize through the acquirement of an interest in conflict with his

fidelity as an agent."); see also United States v. Drumm, 329 F.2d 109, 112 (1st Cir. 1964).  And

under the common law, "an agent who secretly profits from a breach of fiduciary obligation to

his principal must disgorge his ill-gotten gains."  Crandon v. United States, 494 U.S. 152, 158

(1990).  Here, the government argues that Berman's secret agreement with POGO to receive the

proceeds of certain *qui tam* suits constituted a conflict of interest in violation of Berman's duty of

loyalty to the United States.  Thus, the government says, it is entitled to judgment in the amount

of $383,600, which amounts to Berman's ill-gotten profit by virtue of the transaction.  As

explained below, under the circumstances present here, the Court disagrees.

In his opposition brief, Berman vigorously asserts that "[a]t no time were [his] actions in

conflict with the interests of his employer, the Department of the Interior.  Indeed, they were

entirely congruent."  See Berman's Opp'n at 3.  There is admittedly some force to that

contention.  After all, the record indicates that Berman had been advocating for the use of

NYMEX prices in computing oil royalty valuations since 1986, well before any liaison with

POGO came to pass.  Likewise, when Berman's suggestions were ultimately implemented, the

government received substantially more in royalty proceeds, which would not seem to indicate that Berman's interests were adverse to the government.

On the other hand, the government is correct that its "interests go beyond the pecuniary interests of recovering money in an individual case." See Pl.'s Reply at 8. More importantly, the jury's verdict that Berman violated 18 U.S.C. § 209(a) serves as a predicate for Berman's breach of fiduciary duty -- that was, after all, the situation contemplated in Crandon, 494 U.S. at 158 (explaining that "it is at least clear that the Government must prove a violation of § 209(a) to prevail in these [fiduciary duty violation] cases"). In any event, the Court concludes that the same facts that rendered Berman liable under § 209(a) also support a finding that he breached his fiduciary duty to the government. Indeed, as the government puts it, and Crandon noted, having two paymasters -- as Berman did here -- is the paradigmatic example of a conflict of interest and breach of a fiduciary obligation.[1] Id. at 165 (explaining the policy justifications for prohibiting "two paymasters for the same employee on the same job") (internal quotation omitted).

Moreover, the government has submitted evidence of numerous Office of Government Ethics regulations that "prescribe employee conduct," see Pl.'s Mot. at 6-7, many of which prohibit accepting monetary gifts from outside sources without prior approval, see, e.g., 5 C.F.R. § 2635.204(d)(1). That Berman violated[2] those regulations, the government contends, is

---

[1] Although it is true that this problem may be somewhat mitigated in circumstances where the two paymasters have interests that mostly align, the government's interests in this case do not fully coincide with POGO's interests. See Hughes Aircraft Co. v. United States ex rel. Schumer, 520 U.S. 939, 949 (1997) ("*[Q]ui tam* relators are different in kind than the Government. They are motivated primarily by prospects of monetary awards rather than the public good.")

[2] Berman does not appear to contest that he violated government ethics regulations by neglecting to obtain prior approval for his receipt of POGO's payment.

sufficient in its own right to establish a violation of his fiduciary obligation to the Department of the Interior.  Berman has no ready response to that argument.  The Court concludes that the government has demonstrated that Berman acquired an interest in conflict with his employer for purposes of fiduciary duty analysis.

Nevertheless, Berman argues that he did not breach any duty because "[t]he facts in this case would not warrant finding that Mr. Berman received a secret payment from POGO."  See Berman's Opp'n at 5.  The Court disagrees.  Even viewing the record in the light most charitable to Berman, the evidence only shows that POGO disclosed the payment to an official at the Department of Justice shortly before issuing the payment to Berman.  There is no suggestion whatsoever that Berman notified anyone at the Department of the Interior (or any other government agency, for that matter) prior to his receipt of the payment.  Similarly, Berman also concealed from the Department of the Interior his initial agreement with POGO to accept any *qui tam* proceeds.  Berman's suggestion that he "was aware" of POGO's disclosure falls far short of meeting his obligation to disclose fully to his principal any arguably adverse interest that he acquired.  In short, the record does not support Berman's position that he did not receive a "secret payment from POGO."

But that does not end the matter.[3]  The remedy for a fiduciary duty violation is

---

[3] Berman insists that "[t]o prevail on a claim of breach of fiduciary duty by Mr. Berman, the United States must prove an element of scienter that it has not shown in this case."  See Berman's Opp'n at 6.  To begin with, Berman has no support for that proposition.  His reliance on Catskill Development, LLC v. Park Place Entm't Corp., 286 F. Supp. 2d 309 (S.D.N.Y. 2003), is misplaced.  That case involved a claim of tortious interference with fiduciary duty, not the sort of direct claim of fiduciary violation at issue here.  The fact that an individual must have knowledge of existing fiduciary duties in order to induce another party to violate them, as in Catskill, id. at 318-19, does not advance Berman's argument here.  In any event, although the Court did not permit Berman to submit evidence of his supposed "good faith" to the jury, that

disgorgement.  See Crandon, 494 U.S. at 158; see also United States v. Kearns, 595 F.2d 729, 733 (D.C. Cir. 1978) ("If [the public official] takes any gift, gratuity or benefit in violation of his duty, or acquires any interest adverse to his principal, without a full disclosure, it is a betrayal of his trust and a breach of confidence, and he must account to his principal for all he has received.") (citation omitted); see also United States v. Drisko, 303 F. Supp. 858, 860 (E.D. Va. 1969) (noting that the remedy for breach of fiduciary duty is accounting for "undisclosed profits").  Ultimately, the government is not entitled to the relief it seeks through its motion because Berman has already been required to disgorge all of the gains associated with the prohibited payment -- that is, this Court has already entered judgment against Berman in the amount of $383,600 pursuant to the jury's § 209(a) verdict.  In other words, Berman has already forfeited any profit that he received by accepting the payment.  Significantly, the D.C. Circuit has explained that the disgorgement remedy "may not be used punitively." SEC v. First City Fin. Corp., LTD, 890 F.2d 1215, 1231 (D.C. Cir. 1989).  Indeed, disgorgement "is an equitable remedy" and the Court therefore has discretion to deny relief where appropriate.  Id. at 1230. Because Berman has already been subjected to one judgment of $383,600, the Court declines to award the government another judgment against him in the same amount arising out of the same conduct -- that would amount to a double recovery and hence would constitute a punitive use of the disgorgement remedy.[4]  Therefore, the government's motion on Count III will be denied.

_____

does not necessarily preclude its consideration here where the Court sits as the fact-finder. Suffice it to say, the Court is fully aware of all of Berman's arguments and evidence regarding both his and POGO's "intent" with respect to the payment.  Any evidence of "good faith," on this record, does not defeat the fact that Berman acquired an interest adverse to his principal that he did not fully disclose.

[4] Of course, should the jury verdict be reversed on appeal, this assessment could change.

The same goes for the government's unjust enrichment claim contained in Count IV.  As with the breach of fiduciary duty, the proper remedy for unjust enrichment is disgorgement.  Id. ("[D]isgorgement primarily serves to prevent unjust enrichment.").  Even if the government can establish that Berman was unjustly enriched in this instance -- and there is some reason to doubt that it can do so[5] -- the Court will not enter a second judgment against him in the amount of $383,600 pursuant to Count IV.  As explained above, Berman has already been required to disgorge his undisclosed gains by virtue of the jury's verdict, and the government is not entitled to employ the unjust enrichment claim to punish Berman any further.  Thus, the government's motion on Count IV will be denied.

## II.    Declaratory and Injunctive Relief

In Count V, the government requests the following declaration:

> [T]he agreement between Robert A. Berman and the Project on Government Oversight (POGO) to share the proceeds in POGO's *qui tam* law suits concerning the underpayment of oil royalties -- an agreement that was struck orally in or around early December 1996 and put in writing January 5, 1998, is declared void as against public policy and law.

See Pl.'s Proposed Order ¶ 5.  There are two problems with the proposed declaration, however.

First, the agreement between POGO and Berman is only against public policy so long as Berman

---

[5] Specifically, in Rapaport v. U.S. Dep't of Treasury, 59 F.3d 212 (D.C. Cir. 1995), the D.C. Circuit stated that "unjust enrichment simply does not lie when the plaintiff has not bestowed some sort of benefit upon the defendant."  Id. at 217.  That statement also finds support in the Restatement of Restitution § 1, which provides: "A person who has been unjustly enriched at the expense of another is required to make restitution."  In this case, however, it is not clear that Berman has been unjustly enriched at the expense of any party to this litigation.  The government, for its part, urges that the Rapaport court merely "spouted generalizations" that this Court should not take at face value.  See Pl.'s Reply at 11.  Contrary to the government's suggestion, this Court does not cavalierly disregard statements from the D.C. Circuit.  It is not necessary, however, to decide this question because even if Berman was initially unjustly enriched, he has since disgorged those ill-gotten gains.

remains an employee of the federal government.  <u>Crandon</u> makes plain that § 209(a)

encompasses an important temporal element: it applies only to <u>current</u> government employees.

494 U.S. at 162 (explaining that "§ 209(a) requires employment status at the time of payment").

Thus, the government's proposed declaration is overly broad in the sense that, hypothetically, if

Berman were to resign his government post today, POGO could issue a payment to him

tomorrow consistent with the terms of the January 1998 agreement without running afoul of §

209(a).[6]  Second, as Berman points out, "[t]he jury verdict that Mr. Berman's acceptance of

money from POGO violated 18 U.S.C. § 209(a) . . . obviates the need for a declaration [that] the

payment was unethical and illegal and the agreement between POGO and Mr. Berman

unenforceable."  <u>See</u> Berman's Opp'n at 9.  The Court agrees.  It is difficult to see what a

declaratory judgment would add in this circumstance.  After all, most cases concerning the

declaratory judgment device involve some type of anticipatory proceeding.  Here, by contrast, the

government's proffered declaration merely restates the outcome of the trial.  There is no need for

such duplicative relief and the Court declines, in its discretion, to issue such a declaration here.

<u>See</u> <u>Hanes Corp. v. Millard</u>, 531 F.2d 585, 591 (D.C. Cir. 1976), <u>superseded by statute on other</u>

<u>grounds</u> ("There is no absolute right to a declaratory judgment in the federal courts. . . . [Whether

one is granted] in a particular case is a matter of judicial discretion.").

     Turning to the government's request for an injunction preventing Berman from receiving

and POGO from issuing any further payments, POGO insists that the government's request is

now moot.  Specifically, POGO has submitted the sworn affidavit of Executive Director Danielle

Brian indicating that POGO "will not provide funds from POGO's share of the *qui tam* proceeds

---

[6] Similarly, Berman would seemingly no longer breach any fiduciary duty for maintaining two paymasters.

to any federal employee ever again." <u>See</u> POGO Opp'n Brian Aff. ¶ 2.  Moreover, Ms. Brian has

indicated that even if POGO prevails on appeal, "[it] will still not provide any funds from its

share of the *qui tam* proceeds to any federal employee." <u>Id.</u> ¶ 3.  Thus, in POGO's view, there is

no need for the government to secure an injunction to protect its interests.

The government sees it differently, however.  Ms. Brian's affidavit is inadequate in the

government's view because it does not preclude Ms. Brian "from changing her mind or some

future executive director from taking a different position."  <u>See</u> Pl.'s Reply to POGO's Opp'n at

2 n. 1.  Similarly, the government insists that the affidavit is not "enforceable in any way should

POGO change its mind in the future."  <u>See</u> Pl.'s Reply at 14.

Although the government's request for an injunction is not strictly moot because it

remains conceivable that POGO could issue future payments, the Court nevertheless concludes

that an injunction is not warranted on this record.  When examining whether injunctive relief is

appropriate, the D.C. Circuit has indicated that a "district judge should consider whether a

defendant's violation was isolated or part of a pattern, whether the violation was flagrant and

deliberate or merely technical in nature, and whether the defendant's business will present

opportunities to violate the law in the future."  <u>First City</u>, 890 F.2d at 1228.  "No single factor is

determinative; instead, the district court <u>should determine the propensity for future violations</u>

based on the totality of circumstances."  <u>Id.</u> (emphasis added).

Applying those criteria here, the Court concludes that future violations are unlikely and

that an injunction is therefore unwarranted.  To begin with, Ms. Brian has submitted a sworn

declaration that POGO will not issue any further *qui tam* settlement payments to government

employees, even if it prevails on its appeal in this case.  And even without such an affidavit, there

would be powerful reasons to doubt that any future payments would take place.  POGO issued

the payment at issue to Berman in 1998.  Since then, both POGO and Berman have endured

congressional hearings, a criminal investigation, and this litigation, which has spanned five years

and finally culminated in a week-long trial -- all arising out of that single payment.  It would take

a truly non-rational actor to go through that ordeal unsuccessfully only to then engage in

precisely the same disputed conduct -- either giving or accepting a prohibited payment -- to start

all over again.  There is no evidence that this incident reflects a continuing pattern on either

POGO or Berman's part.  Based on the totality of the circumstances, then, and especially Ms.

Brian's sworn affidavit indicating that there will be no further payments by POGO to any

government employees, the Court concludes that an injunction in this case is unnecessary.

Hence, the Court will deny the government's motion on Count V.

## CONCLUSION

For the foregoing reasons, the Court will deny the government's motion.  A separate

Order accompanies this Memorandum Opinion.


/s/      John D. Bates
John D. Bates
United States District Judge


Dated:   August 20, 2008